## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| INTERLACHEN PROPERTIES, LLC; KUEPERS CONSTRUCTION, INC.; and INTERLACHEN PROPERTYOWNERS ASSOCIATION, INC., | Civil No.  14-4380 (JRT/LIB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| STATE AUTO INSURANCE COMPANY, | |
| Defendant. | |

David D. Hammargren and Jason C. Tarasek, **HAMMARGREN & MEYER, P.A.**, 3500 American Boulevard West, Suite 450, Bloomington, MN  55431, for plaintiffs.

Cheryl A. Hood Langel and Robert L. McCollum, **MCCOLLUM CROWLEY MOSCHET MILLER & LAAK, LTD.**, 7900 Xerxes Avenue South, Suite 700, Minneapolis, MN  55431, for defendant.

Plaintiff Interlachen Properties, LLC ("the LLC") was the sales agent and real estate manager for a Crow Wing County housing development.  Plaintiff Kuepers Construction ("Kuepers") constructed the development.  After homeowners discovered design defects, Plaintiff Interlachen Propertyowners Association ("Interlachen"), which represents the homeowners in the development, filed a lawsuit alleging faulty construction.  Interlachen eventually won a judgment of over $2 million against Kuepers, and it signed *Miller-Schugart* agreements with both the LLC and Kuepers, promising to

seek the judgment only from Kuepers's insurer, Defendant State Auto Insurance Company ("State Auto").

The LLC, which felt it had also been insured by State Auto, filed a complaint in Crow Wing County in the fall of 2014, alleging that State Auto had breached its contractual obligations to defend the LLC. When the LLC filed its complaint against State Auto, the LLC also named Kuepers and Interlachen as defendants. All three of these entities – the LLC, Kuepers, and Interlachen – are Minnesotan companies (together, the "Minnesota Parties"). State Auto, on the other hand, is an Ohioan company. State Auto immediately removed the case to federal court. State Auto then moved to realign the parties, and argued that the Kuepers and Interlachen had been fraudulently joined as defendants. The LLC moved to remand the case back to state court.

United States Magistrate Judge Leo I. Brisbois subsequently granted State Auto's Motion for Realignment of the parties and ordered that the caption in this case be amended. Before this Court now are the LLC's objections to the Magistrate Judge's decision, along with the LLC's motion to remand. Because no actual or substantial conflict exists between the Minnesota Parties, the Court will overrule the LLC's objection to the Magistrate Judge's realignment decision. Consequently, because complete diversity exists, the Court will also deny the LLC's motion to remand.

## BACKGROUND

### I.    THE PROPERTY AND CONSTRUCTION DEFECTS

In November 1997, Kuepers – a Minnesota construction company – began construction on a Common Interest Community in Crow Wing County, Minnesota ("the Project").  (Notice of Removal, Ex. A ("Compl.") ¶¶ 8-9, Oct. 17, 2014, Docket No. 1.) The LLC – also a Minnesota company – was Kuepers's real estate manager and, between 1997 and 2001, it was responsible for the marketing and sale of the residential units that made up the Project.  (*Id.* ¶¶ 5, 10, 12.)  Interlachen, a Minnesota non-profit, represented homeowners in the Project.  (*Id.* ¶ 7.)

Kuepers initially completed work on many aspects of the Project in 2001. Nevertheless, Kuepers and the LLC continued to perform additional repair work on the Project through 2010.  (*Id.* ¶ 13.)  The LLC continued to operate as Kuepers's real estate manager for the Project until 2010, at which time Kuepers refused to perform further repairs on the Project and Kuepers and the LLC effectively severed ties with the Project. (*Id.* ¶ 12.)

It is helpful to briefly summarize the additional repairs Kuepers did on the project, between 2001 and 2010.  In August 2001, Kuepers installed ridge vents on the roofs of the Project, and replaced rotted roof decking, wet insulation, and damaged shingles.  (*Id.* ¶ 14.)  Kuepers conducted a complete change in the roof system as well, labeling all of this work an "extension of the construction project development wide."  (*Id.* ¶ 15.) Kuepers did not notify Interlachen, however, of the damage it found or the extent of the repairs.  (*Id.* ¶ 14.)

In 2004, a series of repairs began involving the Project's siding. Interlachen found problems with the Project's siding in December 2004 and – during 2005 – undertook efforts to repair this damage. (*Id.* ¶ 16.) Interlachen then declared that "all of the measurements [Kuepers] took were well within the acceptable level for wood." (*Id.*) Once these repairs were complete, Kuepers and the LLC advised Interlachen that the siding problems had been resolved and that Kuepers "considered the matter closed." (*Id.* ¶ 17.) Nevertheless, in July 2006, Kuepers performed additional siding work, receiving payment from Interlachen for the work. (*Id.* ¶ 18.) Kuepers and the LLC then told Interlachen that this set of repairs had addressed Interlachen's concerns with the siding. (*Id.* ¶ 19.) Finally, Kuepers performed additional siding work on the Project in 2009. (*Id.* ¶ 20.) Interlachen initially paid Kuepers for this work, but then requested reimbursement under Kuepers's warranty agreements. (*Id.* ¶ 21.) The LLC was aware of and involved in the August 2001, December 2004, July 2006, and 2009 repairs. (*Id.* ¶¶ 14, 16, 18, 20.)

In 2010, Kuepers opted not to honor its warranty as to the 2009 repairs. (*Id.* ¶ 22.) The LLC also discontinued its role as Kuepers's real estate manager. (*Id.* ¶ 22.) In the fall of 2010, Interlachen retained an expert to do an exhaustive review of damage at the Project. (*Id.* ¶ 23.) This review revealed several problems: the siding, windows, weather resistive barriers, poly-vapor barrier, and insulation were all improperly installed; the grading was poorly done; and several of the Project's elements did not meet minimum building codes. (*Id.*) Interlachen's experts also concluded that widespread design and engineering defects contributed to the damages. (*Id.*)

## II.     PRIOR STATE PROCEEDINGS

### A.     State Action

On November 28, 2011, Interlachen filed this action in Crow Wing County District Court, naming Kuepers and the LLC as defendants.  (*Id.* ¶ 24.)  In the lawsuit, Interlachen sought damages against the LLC for property damage caused by the LLC's negligence in the sale and marketing of the Project, and for the LLC's negligence in overseeing the construction and repairs.  (*Id.*)  Interlachen also asserted claims against Kuepers for negligence, breach of contract, and breach of warranty.  (*Id.*)

Kuepers and the LLC forwarded notice of the action to their insurer, State Auto, under policy No. PBP 2293305.  (*Id.* ¶ 25.)  State Auto is an Ohio corporation.  (*Id.* ¶ 6.)  State Auto did not defend the LLC.  (*Id.* ¶ 27.)  As a result, the LLC alleged that it was forced to incur significant expenses by retaining its own counsel to defend against Interlachen's claims.  (*Id.* ¶ 28.)

In late 2012, the LLC won summary judgment against Interlachen.  (*Id.* ¶ 29.)  Interlachen filed a petition for discretionary review of the summary judgment ruling, but the petition was denied as premature since the case against Kuepers was ongoing.  (*Id.* ¶ 30.)  Interlachen also attempted an interlocutory appeal, at the same time as it tried to pierce the corporate veil in an attempt to impose personal liability upon both the LLC and its principals.  (*Id.* ¶ 31.)  Interlachen repeatedly expressed its intention to continue to pursue the LLC.  (*Id.*)

On January 30, 2013, some of the parties – excluding the LLC – engaged in a mediation session. (*Id.* ¶ 32.) At the mediation, Interlachen submitted a joint demand to Kuepers and the LLC of $5,000,000 to resolve all claims. (*Id.* ¶ 33.) Interlachen's proposed settlement fell within the available policy limits of the State Auto policy. (*Id.*) The counsel retained by State Auto to defend Kuepers countered with an offer on behalf of Kuepers in the amount of $10,000. (*Id.*) Although the LLC, fearing continued pursuit by Interlachen, and possible reversal of its summary judgment victory, would have preferred to settle, State Auto did not make any offer of settlement on behalf of the LLC. (*Id.*) The LLC alleges that State Auto did not request that it contribute to the settlement, never advised it that State Auto would deny coverage for most of the claims, and refused to settle despite Interlachen's suggested settlement amount being within State Auto's policy limits. (*Id.* ¶¶ 34-35.)

Because settlement negotiations between Kuepers and Interlachen failed, Interlachen's case against Kuepers continued. On February 21, 2014, following a jury trial, the state trial court entered judgment against Kuepers in the amount of $2,147,000. (*Id.* ¶ 38.) The court also required Kuepers to post a supersedeas bond in the amount of $2,147,000. (*Id.* ¶ 39.) After the entry of judgment, the parties again engaged in settlement discussions. (*Id.* ¶ 40.) Interlachen sought the judgment amount, but State Auto refused to settle and ultimately denied coverage to Kuepers. (*Id.* ¶¶ 40-41.) State Auto also refused to purchase or obtain an appeal bond on behalf of either the LLC or Kuepers. (*Id.* ¶ 42.)

### B.    *Miller-Shugart* Agreements

As a result of State Auto's refusal to obtain the bond, Kuepers began to consider bankruptcy and, to avoid that fate, entered into a settlement with Interlachen.  (*Id*. ¶ 44.) The settlement resulted in a *Miller-Shugart* agreement,[1] dated July 24, 2014, which stipulated to a judgment of $2,940,875.15.  (Aff. of Robert L. McCollum ("McCollum Aff."), Ex. 12, Oct. 28, 2014, Docket No. 7.)  The agreement was limited to Interlachen's defective construction and negligent repair claims against Kuepers, and expressly reserved Interlachen's negligent design claims.  The *Miller-Shugart* agreement included an agreement by Interlachen to pursue the judgment against State Auto, not Kuepers.[2] (*Id.* at 5-7.)  This agreement was recently the subject of similar litigation in this district, before Judge Ann Montgomery.  *Kuepers Constr., Inc. v. State Auto Ins. Co.*, No. 15-449 (ADM/LIB).

Despite its loss against the LLC at summary judgment, Interlachen continued to maintain that the LLC was liable for both the $2.5 million judgment, along with additional damages.  (Compl. ¶ 45.)  Due to the fact that the LLC and Kuepers are related

---

[1] In a *Miller-Shugart* agreement, the insured "who has been denied coverage for a claim agrees with the claimant . . . on a judgment for an amount collectible from the insurance policy. The claimant releases the insured from personal liability and the claimant's recovery is limited to the amount obtained from the insurers."  *Corn Plus Co-op. v. Cont'l Cas. Co.*, 516 F.3d 674, 677 n.2 (8th Cir. 2008) (citing *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982)).

[2] On August 28, 2014, Interlachen entered a second *Miller-Shugart* agreement with Kuepers, which covered Interlachen's negligent design claims.  (McCollum Aff., Ex. 13.)  In that agreement, the parties stipulated to a judgment in the amount of $2,000,000 and Interlachen agreed to pursue that judgment from Kuepers's other insurer, Jams River Insurance Company. (*Id.* at 4-5.)  That agreement is the subject of a different case in this district, which is before Judge Montgomery.  *James River Ins. Co. v. Interlachen Propertyowners Ass'n*, No. 14-3434 (ADM/LIB).

entities with one common principal, the LLC alleges that the judgment against Kuepers and the impending appeals faced by the LLC could have forced the LLC into bankruptcy. (*Id.* ¶ 46.)

The state trial court approved the *Miller-Shugart* agreement between Kuepers and Interlachen and, on August 11, 2014, the court administrator entered judgment in the amount of $2,940,875.15 in favor of Interlachen.  (*Id.* ¶ 47.)  On August 22, 2014, Interlachen filed an appeal of the summary judgment order in favor of the LLC.  (*Id.* ¶ 49.)  Facing the threat of appeal and continued pursuit by Interlachen, and without any representation by State Auto, the LLC negotiated and entered into a *Miller-Shugart* agreement with Interlachen.  (*Id.* ¶ 54; *see also* McCollum Aff., Ex. 14.)  The agreement stipulated to a $2,059,125 judgment in favor of Interlachen pursuant to its negligence claims against the LLC.  (McCollum Aff., Ex. 14 at 3-4.)  Interlachen agreed to pursue that judgment from State Auto.  On September 24, 2014, the state trial court approved the agreement, concluding it was "fundamentally fair, adequate and reasonable."  (*Id.* ¶ 55.)

## III.   THIS CASE

The LLC filed this complaint in Crow Wing County District Court on October 8, 2014.  (*Id.* at 18.)  Although the complaint was primarily directed at State Auto, the LLC also included Kuepers and Interlachen as defendants.  (*Id.* ¶¶ 7-8.)  In Count One, the LLC seeks a declaratory judgment against "all defendants."  (*Id.* ¶¶ 56-61.)  The LLC asks the Court to grant a declaratory judgment stating that State Auto owed the LLC a legal defense and indemnification, and that State Auto is liable for the amount of the

judgment found in the LLC's *Miller-Shugart* agreement with Interlachen.  (*Id.*)  The other six counts assert claims – ranging from breach of contract to breach of the implied duty of good faith and fair dealing – solely against State Auto, based on the insurer's failure to defend and indemnify the LLC.  (*Id.* ¶¶ 62-83.)

In explaining its decision to include Kuepers and Interlachen as defendants, the LLC argues that, as a judgment creditor, Interlachen had an interest in the litigation and was an indispensable party.  (*Id.* ¶ 7.)  The LLC also argues that, as a party to the State Auto insurance policy at issue, Kuepers was an indispensable, although nominal, party under Minnesota Statute § 555, *et seq.*  (*Id.* ¶ 8.)

On October 17, 2014, State Auto removed the action to federal court, asserting that the LLC had fraudulently joined Interlachen and Kuepers as defendants to destroy diversity jurisdiction.  (Notice of Removal ¶ 4.)  Then, on October 28, 2014, State Auto filed a Motion for Realignment of Parties, seeking to move Kuepers and Interlachen to the plaintiff's side of the litigation.  (Mot. for Realignment of Parties, Oct. 28, 2014, Docket No. 4.)  State Auto argued that realignment was appropriate because the interests of the LLC, Kuepers, and Interlachen were all aligned.

The LLC subsequently filed a Motion to Remand to State Court.  (Mot. to Remand to State Court, Nov. 11, 2014, Docket No. 12.)  The LLC argued that remand was appropriate because, like the LLC, Kuepers and Interlachen were Minnesota corporations.  Thus, because they were on the defendant's side of the litigation, diversity of citizenship did not exist.

Initially, State Auto was the only defendant who had answered the Complaint filed by the LLC.  (State Auto's Answer & Countercl., Oct. 29, 2014, Docket No. 10.)  State Auto also filed what it labeled a counterclaim against the LLC and Interlachen, seeking a declaratory judgment.  (*Id.*)  On November 12, the Magistrate Judge ordered Kuepers and Interlachen to file responsive pleadings.  (Order, Nov. 12, 2014, Docket No. 20.)  On November 14, Interlachen and Kuepers both filed their answers; Interlachen also filed a reply to what it labeled State Auto's cross – and not counter – claim.  (Interlachen's Answer, Cross-cl., & Countercl., Nov. 14, 2014, Docket No. 27; Interlachen's Reply to State Auto's Cross-cl., Nov. 14, 2014, Docket No. 25;  Kuepers's Answer & Cross-cl., Nov. 14, 2014, Docket No. 28.)  Interlachen's answer included a cross-claim against State Auto and Kuepers – seeking a declaratory judgment against State Auto and garnishment as to State Auto's policies – and a counterclaim against the LLC, also seeking garnishment as to State Auto's policies implicated in the LLC's claims. Kuepers's answer included a cross-claim against State Auto, seeking a declaratory judgment and asserting other claims.  At the same time, the LLC filed its answer to State Auto's counterclaim.  (LLC's Answer to State Auto's Countercl., Nov. 14, 2014, Docket No. 26.)

On January 8, 2015, the Magistrate Judge granted State Auto's Motion for Realignment of Parties, ordering that the docket be updated to reflect the new alignment. (Order Granting Def.'s Mot. for Realignment of Parties, Jan. 8, 2015, Docket No. 37.)

The LLC timely filed objections to the Magistrate Judge's decision.[3]  (Pl.'s Objections to Magistrate Judge's Grant of Mot. for Realignment ("Objections") at 4-5, Jan. 16, 2015, Docket No. 38.)

## DISCUSSION

### I.   STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive matters is extremely deferential.  *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007).  The Court will reverse such an order only if it is clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

### II.   OBJECTIONS TO MAGISTRATE JUDGE'S REALIGNMENT DECISION

In order to sustain diversity jurisdiction, "there must exist an actual, substantial, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side."  *City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63, 69 (1941) (internal citations and quotation marks omitted).  The Supreme Court has placed some of the burden of determining jurisdiction on courts, noting that federal courts have a duty "to

---

[3] In the case involving Kuepers's similar action against State Auto, Judge Montgomery recently overruled Kuepers's objection to the Magistrate Judge's decision to realign the parties, denied Kuepers's motion to remand, and granted State Auto's motion to dismiss due to that case being duplicative of this one.  (*Kuepers Constr., Inc. v. State Auto Ins. Co.*, No. 15-449, Mem. Op. & Order at 23 ("*Kuepers Order*"), July 13, 2015, Docket No. 47.)

look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Id*. (internal quotation marks omitted).

In deciding whether to realign the parties, the Eighth Circuit applies the "actual and substantial conflict" test. *Alliance Energy Servs., LLC v. Kinder Morgan Cochin LLC*, --- F. Supp. 3d ---, No. 14-1668, 2015 WL 263691, at *9 (D. Minn. Jan. 21, 2015) (quoting *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870-71 (8th Cir. 1966)). That test asks whether there is "any actual and substantial conflict existing between the parties as aligned." *Id*. (internal quotation marks omitted). If such conflict exists, the court should not realign the parties. *Id*.

## A.      Jurisdiction Over Realignment Motion

"Federal courts are courts of limited jurisdiction and the threshold requirement in every federal case is jurisdiction." *Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990) (internal quotation marks omitted). 28 U.S.C. § 1441 governs the removal of civil actions, like this one, in which the removing defendant alleges that diversity of citizenship should exist when the properties are properly aligned. The removal statute is construed narrowly and all doubts are construed in favor of remand back to state court. *See Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

The LLC's chief argument is that the Magistrate Judge acted contrary to governing law by reaching the realignment issue at all. The LLC contends that, because its state complaint included non-diverse defendants, when State Auto removed the case, this

Court had only limited jurisdiction to consider State Auto's contention that the LLC had fraudulently joined Kuepers and Interlachen. *See Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003) ("When, as here, the respondent has joined a non-diverse party as a defendant in its state case, the petitioner may avoid remand – in the absence of a substantial-federal question – **only** by demonstrating that the non-diverse party was fraudulently joined." (emphasis added)); *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012) ("The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims."); *see also Andalusia Enters., Inc. v. Evanston Ins. Co.*, 487 F. Supp. 2d 1290, 1295 (N.D. Ala. 2007) (stating that the federal removal statute "contemplates the determination of the question of removability using the lineup of the parties at the time of removal, unless that lineup is facially improper").  The Court could only keep the case in federal court by determining that State Auto had demonstrated fraudulent joinder – a higher, more stringent threshold than showing that realignment is necessary.  Absent such a showing, the Court would need to grant the LLC's motion to remand.

Specifically, the LLC contends that the Magistrate Judge's conclusion that the Court could consider the realignment issue before addressing fraudulent joinder was contrary to the law, as enunciated in the Eighth Circuit cases cited above.  Even though cases like *Filla* and *Murphy* only analyzed the fraudulent joinder issue, and not realignment, the LLC argues that their holdings implicitly preclude consideration of

realignment in a case involving non-diverse defendants and one defendant attempting to remove the case to federal court.  Moreover, the LLC argues that the cases cited by the R&R are inapposite because they are more standard realignment cases not involving a defendant's attempt to establish diversity jurisdiction, or are otherwise distinguishable. *See, e.g.*, *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1312-15 (11th Cir. 2012) (in an action by a judgment creditor against a defendant and the defendant's insurer, after securing a judgment against the defendant in state court, realigning the defendant to the plaintiffs' side of the litigation and denying a motion to remand, but not addressing fraudulent joinder).

Despite the LLC's protestations to the contrary, this issue is not one on which courts have spoken with uniformity.  Instead, the parties have identified an ongoing debate among federal courts.  Indeed, as one court noted, "there is authority supporting both the proposition that realignment may be used to satisfy diversity jurisdiction in removed actions and the proposition that realignment is not appropriate [– and therefore only fraudulent joinder **is** appropriate –] when diversity was not present when the action was removed."  *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 08-1542, 2008 WL 4453170, at *6 (S.D. Tex. Sept. 26, 2008).  Some cases do hold that, where a complaint is facially non-diverse at the point of removal, a defendant's only recourse for establishing diversity jurisdiction is asserting fraudulent joinder.  *See Schwartz v. Liberty Mut. Ins. Co.*, No. 01-2049, 2001 WL 1622209, at *6 (E.D. Pa. Dec. 18, 2001) (stating that the removing defendant's reliance on the realignment doctrine enunciated in *City of Indianapolis* was "misplaced," and that "the proper test when the plaintiff sues non-diverse defendants is

fraudulent joinder"); *Roblez v. Ramos*, No. 01-366, 2001 WL 896942, at *2-*3 (N.D. Tex. Aug. 1, 2001) ("First, the court is not convinced that this procedure – realignment to allow removal – is authorized . . . . If a defendant can remove, on diversity grounds, a case properly filed in state court without – at the same time – shouldering . . . the **heavy** burden of showing fraudulent joinder, [the] balance [between not rewarding abusive pleading by the plaintiff, the plaintiff's prerogative to select the forum, and the defendant's statutory right to remove] will obviously be upset.").

Many other cases have endorsed a court's decision to realign parties when the complaint at the time of removal included non-diverse defendants. *Lott v. Scottsdale Ins. Co.*, 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011) ("Put simply, it is settled that where, as here, there is no diversity of citizenship based on the initial alignment of the parties in an action commenced in state court, a defendant may nonetheless remove the case to federal court and request realignment of the parties to produce the requisite diversity. . . . The seldom stated, but sensible rationale for these decisions is that jurisdictional consequences should not be determined until the parties are properly aligned according to their interests, and this principle applies equally to cases that are originally filed in federal court as it does to cases that are removed from state court."); *Martenson v. Wells Fargo Bank, N.A.*, No. 12-182, 2013 WL 4027534, at *2 (D. Utah Aug. 7, 2013); *Ohio Cas. Ins. Co. v. RLI Ins. Co.*, No. 04-483, 2005 WL 2574150, at *4 (M.D.N.C. Oct. 12, 2005) ("Thus, in the appropriate circumstances, courts will realign the parties and will retain jurisdiction based on the parties' realigned positions.").

Some of these cases involve courts explicitly considering both fraudulent joinder and realignment arguments, and basing their decision on realignment even if a defendant had not shown fraudulent joinder. *See Scott v. State Farm Fire & Cas. Co.*, No. 13-13287, 2014 WL 3054784, at *5 (E.D. Mich. July 7, 2014) (rejecting a fraudulent joinder argument as to one non-diverse defendant, but still concluding diversity jurisdiction existed after realigning the parties); *Ryan Envtl., Inc. v. Hess Oil Co., Inc.*, 718 F. Supp. 2d 719, 725-28 (N.D. W. Va. 2010) (considering, in response to defendant's attempt to remove a complaint that was not facially diverse, both fraudulent joinder and realignment arguments); *Earnest v. State Farm Fire & Cas. Co.*, 475 F. Supp. 2d 1113, 1117 (N.D. Ala. 2007) (deciding that two of three non-diverse defendants were fraudulently joined, but finding that a third should be realigned, and consequently concluding that diversity jurisdiction existed); *Spring-Ford Area Sch. Dist. v. Genesis Ins. Co.*, 158 F. Supp. 2d 476, 480 (E.D. Pa. 2001) ("If the court finds that the nondiverse party was not fraudulently joined, diversity jurisdiction may still exist if the nondiverse party should be realigned.").

Moreover, many of these cases are directly on point. Many involve a similar fact pattern to this case, in which an injured party obtains a judgment against a defendant/insured, the defendant/insured's insurer denies insurance coverage, and the injured party or defendant/insured files an action against the insurer, often seeking a declaratory judgment that clearly states that the insurer owed a duty to defend and indemnify its insured and breached that duty. And in those cases, courts often realign the parties such that the injured party and defendant/insured are on the plaintiffs' side of the

litigation, with the insurer on the defendant's side.  *See, e.g.*, *Garcia v. Century Sur. Co.*, No. 14-3196, 2015 WL 1598069, at *1-*2 (D. Colo. Apr. 7, 2015).

In *Garcia*, for example, a magistrate judge stated that, "[i]n similar coverage disputes, federal courts routinely realign the parties to place the injured third party on the same side of the caption as the tortfeasing insured, as against the insurer." *Id.* at *1.  In response to the argument that both the injured party and the insured were necessary parties, and that their interests were necessarily adverse, the court acknowledged that the parties were all necessary.  *Id.* at *2.  As to the latter argument, however, the court conceded that the insured's interests were adverse to the injured party's interests in "**the underlying negligence action**." *Id.*  But, the court noted that in declaratory judgment actions against insurers, "[t]he question is whether [the insured and injured party] have adverse interests **as to this coverage action – they do not**." *Id.* (emphasis added).  Other courts have reached similar conclusions.  S*ee Hulliung Gymnastics, Inc. v. Philadelphia Indem. Ins. Co.*, No. 13-1279, 2014 WL 3400549, at *2 (S.D. Ill. July 9, 2014) ("However, in a declaratory judgment action such as the instant case, the insurance company is really the adversary of the insured and the insured's victim.  As such, the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party." (internal citation and quotation marks omitted)).

Given this split in authority, and the weight of cases that have reached similar decisions to the Magistrate Judge's in this case, the Court concludes that the Magistrate Judge's Order was not contrary to law in determining that the court had jurisdiction to

consider the realignment issue, before fraudulent joinder, in considering whether diversity jurisdiction exists in this case. *See Erickson v. Colvin*, No. 14-74, 2015 WL 3892293, at *4 (N.D. W. Va. June 24, 2015) ("This Court finds that the magistrate judge's use of the harmless error rule was not clearly erroneous or contrary to law as there is a split among the courts at this time.").

Eighth Circuit decisions like *Filla* and *Murphy* do not preclude this result; they do not consider realignment. *Filla*, 336 F.3d at 809-11. And the in-circuit district court decision in *JBB Investments LLC v. Fazoli's Franchising Systems LLC*, No. 08-03, 2008 WL 2568468 (E.D. Ark. June 25, 2008), which the LLC claims is inapplicable, is actually directly on point. In that case, the plaintiffs sued a company, along with several other Guarantor Defendants. *Id.* at *1-*3. The plaintiffs and Guarantor Defendants were all residents of the same state, with the company being a resident of a different state. *Id.* at *2. The plaintiffs claimed that the company had accused both the plaintiffs and the Guarantor Defendants of violating guaranty agreements. *Id.* But the plaintiffs alleged that their duties under the guaranty agreements had been properly excused. *Id.* The plaintiffs also sought contribution and indemnification from the Guarantor Defendants. *Id.* The company removed the case to federal court, although complete diversity did not exist, arguing that the Guarantor Defendants should be realigned or were fraudulently joined. *Id.* at *2-*4. The court concluded that realignment was not proper because, while the plaintiffs and Guarantor Defendants agreed on whether the guaranty agreements had been properly discharged, an actual and substantial controversy existed between them as to whether the Guarantor Defendants owed the plaintiffs contribution and indemnity. *Id.*

at *3.  The court went on to reject the plaintiffs' fraudulent joinder argument as well.  *Id.* at *4.

The LLC argues that this case is "inapplicable," because the court "declined to apply any theory . . . for purposes of establishing diversity jurisdiction."  (Objections at 6.)  But that characterization of the case is inaccurate.  The court **did** apply both theories; it simply concluded that neither theory warranted realigning or removing defendants, such that diversity jurisdiction existed.  The court could have stated that it would refuse to hear the realignment argument, as the LLC asks the Court to do in this case.  But the court heard the argument – indeed, it reached the realignment issue **first**, which lends strong support to the Magistrate Judge's conclusion in this case that it can realign parties and conclude diversity jurisdiction exists, without reaching fraudulent joinder or remand arguments.  *See also McCarthy Bldg. Cos., Inc. v. RSUI Indem. Co.*, No. 10-2063, 2011 WL 3847401, at *4-*5 (E.D. Mo. Aug. 30, 2011) (considering fraudulent joinder and realignment arguments, and rejecting both).  In sum, the Court concludes the Magistrate Judge was not acting contrary to law when he reached the realignment issue.  As a result, the Court will overrule the LLC's objection that the Court should not have reached this issue.

## B.     Realignment

The LLC does not object to the Magistrate Judge's decision to realign the parties, except to the extent it argues that reaching the realignment issue was improper and the only inquiry should have been whether the LLC fraudulently joined Kuepers and

Interlachen as defendants.  (Objections at 4-9.)  But, having decided that it was proper to reach realignment first, the Court need not consider fraudulent joinder if it concludes that the Magistrate Judge did not clearly err or act contrary to law in deciding to realign the parties.

Here, applying the Eighth Circuit's standard for realignment, there is no dispute that no actual and substantial conflict exists between the LLC and Interlachen and Kuepers.  The LLC's complaint against State Auto, Interlachen, and Kuepers lists seven counts.   But while all are asserted against State Auto, only one is asserted against Interlachen and Kuepers.  (Compl. ¶¶ 56-83.)   Moreover, that count – a declaratory judgment claim – is focused entirely on State Auto, stating that the LLC is entitled to a declaratory judgment that clarifies State Auto's duty to defend and indemnify the LLC, and declares all relevant parties' rights under the State Auto policy.  (*Id.* ¶¶ 58-60.) Finally, it is relevant that the LLC, Interlachen, and Kuepers are all represented by the same attorneys.[4]   Given these facts, and the significant persuasive case law in which courts have realigned like parties in similar ways, the Court concludes the Magistrate Judge did not clearly err or act contrary to law when he decided to realign Interlachen and

---

[4] Additionally, as the Magistrate Judge correctly noted, there is no danger of conflicts arising between the plaintiffs.  *See Corn Plus Co-op. v. Cont'l Cas. Co.*, 516 F.3d 674, 682-83 (8th Cir. 2008); *Geisman v. Am. Econ. Ins. Co.*, No. 11-1185, 2011 WL 4501161 (E.D. Mo. Sept. 28, 2011).  The LLC's *Miller-Shugart* agreement with Interlachen eliminates any conflict between the LLC and Interlachen, and this case presents no potential conflicts between the LLC and Kuepers like the one in *Geisman*.  Indeed, the counterclaims and cross-claims in this case further demonstrate that no conflict exists between the plaintiffs.  Interlachen's sole garnishment counterclaim against the LLC does not present an actual or substantial conflict, and Kuepers asserts no counterclaim against the LLC at all.  (Interlachen's Answer, Cross-cl., & Countercl.; Kuepers's Answer & Cross-cl.)

Kuepers.  *See City of Vestavia Hills*, 676 F.3d at 1312-15; *Garcia*, 2015 WL 1598069, at

*2; *Scott*, 2014 WL 3054784, at *5; *see also Home Ins. Co. of Ill. v. Adco Oil Co.*, 154

F.3d 739, 741 (7th Cir. 1998) ("[T]he normal alignment of parties in a suit seeking a

declaratory judgment of non-coverage is Insurer versus Insured and Injured Party.").  The

Court will overrule the LLC's objection to the realignment.  The parties are now properly

aligned.  As such, the Court will not consider the fraudulent joinder issue.[5]

### C.      Direct Actions Under 28 U.S.C. § 1332(c)(1)(A)

Finally, the LLC argues that, under 28 U.S.C. § 1332(c)(1)(A), and *Reko v.*

*Creative Promotions, Inc.*, 70 F. Supp. 2d 998, 1002 (D. Minn. 1999), *aff'd* 70

F. Supp. 2d 1005 (ADM/AJB), if the parties are realigned, Interlachen's and Kuepers's

cross claims against State Auto would become direct actions against State Auto.  As a

result, State Auto would take on the citizenship of its insured – Minnesota – which, given

that the LLC, Interlachen, and Kuepers are all Minnesota citizens, would consequently

defeat diversity jurisdiction.

Section 1332(c)(1)(A) states that

> a corporation shall be deemed to be a citizen of every State and foreign
> state by which it has been incorporated and of the State or foreign state
> where it has its principal place of business, except that **in any direct action**
> **against the insurer** of a policy or contract of liability insurance . . . to
> which action the insured is not joined as a party-defendant, **such insurer**

---

[5] To the extent the LLC argues that Minnesota Statute § 555.02 requires Kuepers and
Interlachen to be parties in the case, *Drake v. Ryan*, 514 N.W.2d 785, 788 (Minn. 1994) (holding
that if the insured tortfeasor is dismissed from the action, the lawsuit fails) – and assuming the
LLC is correct – the Magistrate Judge's decision does not contravene that requirement or eject
them from the case.  It merely realigns them to a different side of the caption.  The LLC points to
no authority that requires Kuepers and Interlachen to be **defendants** in this action.

**shall be deemed a citizen of** . . . **every State** and foreign state **of which the insured is a citizen**.

28 U.S.C. § 1332(c)(1)(A) (emphasis added).

In *Reko*, Minnesota trustees entered into *Miller-Shugart* settlement agreements with a Minnesota corporation, Creative Promotions Inc. ("CPI"), when CPI's liability insurer ("Atlantic Mutual") refused to defend or provide coverage. *Reko*, 70 F. Supp. 2d at 1000. The trustees then initiated a garnishment action against Atlantic Mutual. *Id*. In response, Atlantic Mutual, a New York corporation, removed the case. *Id*. The trustees filed a motion to remand, arguing that, under Section 1332(c)(1), Atlantic Mutual was a citizen of Minnesota. *Id*. at 1002. Noting that this was an issue of first impression, the court held that the Minnesota garnishment procedure in the context of a *Miller-Shugart* settlement constituted a direct action under Section 1332(c)(1). *Id*. at 1003-04. Consequently, Atlantic Mutual was a citizen of Minnesota and diversity was lacking. *Id*. at 1004.

In *Reko*, the court stated that:

> The effect of the direct action statute was to create diversity jurisdiction in cases where both the tortfeasor and the injured party were residents of one state, but the tortfeasor's insurer was considered a resident of another state. The [above-quoted] amendment to the diversity statute was adopted because such a result was not within the spirit or intent of diversity jurisdiction.

*Id*. at 1002 (citing *Prendergast v. Alliance Gen. Ins. Co.*, 921 F. Supp. 653, 655 (E.D. Mo. 1996)). The LLC appears to read this portion of the *Reko* decision as meaning that there is no diversity jurisdiction when an injured party (who is a resident of the same state as the tortfeasor/insured) sues the tortfeasor's insurer, even if the tortfeasor/insured is a

party to the litigation and is also asserting claims that allege wrongdoing on the part of the insurer.

Before assessing the LLC's argument, it is helpful to recount the history of Section 1332(c)(1). Enacted in 1964, Section 1332(c)(1) seeks "to prevent suit against an insurer in a federal court when both the injured party and the insured are citizens of the same state." *Reko*, 70 F. Supp. 2d at 1004. The provision was added "in response to Louisiana's 'direct action' statute that permitted injured parties to sue a tortfeasor's insurer directly for those damages caused by the insured tortfeasor, without joining the insured tortfeasor as a party." *Eltsefon v. State Farm Mut. Auto. Ins. Co.*, 826 F. Supp. 2d 922, 925 (E.D. Va. 2011) (citing S. Rep. No. 88-1308, at 4 (1964)). The Louisiana law led to a "sharp increase in diversity cases that were not 'within the spirit or the intent' of diversity jurisdiction"; consequently, Congress amended Section 1332(c)(1) to counter the effect of it. *Id*.

With this history in mind, courts have held that a direct action is one in which a "'person with a claim against the insured sues the insurer directly.'" *Cunningham v. Twin City Fire Ins. Co.*, 669 F. Supp. 2d 624, 628 (D. Md. 2009) (quoting *Corn v. Precision Contracting, Inc.*, 226 F. Supp. 2d 780, 782 (W.D.N.C. 2002)). "Courts have uniformly defined the term 'direct action' . . . as those cases in which a party suffering injuries or damages for which another is legally responsible is entitled to bring suit against the other's liability insurance without joining the insured or first obtaining a judgment against him." *State Farm Ins. Co. v. Evans*, 712 F. Supp. 57, 58 (E.D. Pa. 1989) (citing *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901 (9th Cir. 1982)). In

other words, "unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action." *Corn*, 226 F. Supp. 2d at 782 (internal quotation marks omitted). Section 1332(c)(1) has been limited as described above and "has not been broadened to include suits by insureds against their own insurance companies." *Vega-Burgos v. Metro. Life Ins. Co.*, 843 F. Supp. 2d 227, 230 (D.P.R. 2012); *see also Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 921 F. Supp. 1202, 1204 (D. Vt. 1995) (an indemnification or duty to defend action against one's own insurer is not a "direct action" under 28 U.S.C. § 1332).

With this legislative history and these decisions in mind, it is clear that the LLC's action against State Auto, even with the parties properly aligned, is not a "direct action" under Section 1332(c)(1) – at least as the majority of courts have construed the term.[6] To hold otherwise would be to extend Section 1332(c)(1) beyond its intended scope, effectively barring any claim in federal court by an insured against an insurer. Congress did not intend such a result. *Eltsefon*, 826 F. Supp. 2d at 925. Although *Reko* arises in a slightly different factual setting, to the extent it would call for a different result than the cases cited above, the Court disagrees with its reasoning and conclusion. (*See Kuepers Order* at 14 ("Upon reexamination and further development of the case law, the Court no

---

[6] To the extent the LLC tries to pin its Section 1332(c)(1) argument on the contention that, when properly aligned, Interlachen's cross-claim – brought by the injured party – becomes a direct action, the Court will reject that argument as well. The LLC has not shown that this case "is of such a nature that the liability sought to be imposed could be imposed against the insured." *Corn*, 226 F. Supp. 2d at 782 (internal quotation marks omitted). The crux of this case is still the LLC's action against State Auto, which targets State Auto's wrongs, and is not based on the wrongs of any insured.

longer finds the reasoning of *Reko* persuasive and therefore reverses course to join with a multitude of courts in concluding that a suit brought against an insurer for the insurer's independent wrongs is not 'direct' within the context of § 1332(c)(1)(a)").)   In sum, because this case does not involve a Section 1332(c)(1) direct action, State Auto does not take on the citizenship of its insured and complete diversity is undisturbed.

## III.    MOTION TO REMAND

Because the Court will overrule the LLC's objections to the Magistrate Judge's realignment position, the parties are now properly aligned with the LLC, Kuepers, and Interlachen on the plaintiffs' side of the litigation, and State Auto on the defendant's side. As a result, complete diversity now exists.[7]   (Compl. ¶¶ 5-8); 28 U.S.C. § 1332(a)(1). Because complete diversity jurisdiction exists, the LLC's motion to remand the case to state court – which is based on the argument that Kuepers and Interlachen are defendants and not diverse to the LLC, (Mem. of Law in Supp. of LLC's Mot. to Remand at 1, Nov. 11, 2014, Docket No. 14) – fails.  The Court will consequently dismiss the LLC's motion to remand.[8]

---

[7] The amount-in-controversy requirement is also met, since the amount at issue is well over $75,000.  (Notice of Removal ¶ 12); 28 U.S.C. § 1332(a).

[8] The Court will also reject the LLC's request for costs, expenses, and attorney's fees, under 28 U.S.C. § 1447(c).  Similarly, the Court will deny State Auto's request for costs, expenses, and attorney's fees.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The LLC's objection [Docket No. 38] is **OVERRULED** and the Order of the Magistrate Judge dated January 8, 2015 [Docket No. 37] is **AFFIRMED**.

2.      The LLC's Motion to Remand [Docket No. 12] is **DENIED**.

      a.      The LLC's request for costs, expenses, and attorney's fees[9], pursuant to 28 U.S.C. § 1447(c), is **DENIED**.

      b.      State Auto's request for costs, expenses, and attorney's fees[10] is also **DENIED**.

DATED:  September 30, 2015                s/ John R. Tunheim
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                           Chief Judge
                        United States District Court

---

[9] *See* Memorandum of Law of Plaintiff Interlachen Properties, LLC, in Support of Motion to Remand [Docket No. 14]

[10] *See* Memorandum in Opposition to Motion to Remand to State Court [Docket No. 30].